Robert Arthur WETZLER

v.

Eddie CANTOR.

Civil No. B–96–411.
Bankruptcy No. 94–5–5595.

United States District Court,
D. Maryland.

Nov. 15, 1996.

Ronald Jay Drescher, Gebhardt and Smith, Towson, MD, for appellant Robert Arthur Wetzler.

Ann Ramsey Bergan, Michael L. Jennings, Baltimore, MD, Robert L. Hodges, McGuire, Woods, Battle & Boothe, LLP, Richmond, VA, for appellee Eddie Cantor.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court is an Appeal from the United States Bankruptcy Court for the District of Maryland. Appellant Robert Arthur Wetzler ("Wetzler"), the Debtor, appeals from an order of the bankruptcy court dated January 11, 1996, which allowed a joint claim against him and his wife Joyce T. Wetzler ("Ms. Wetzler") for contribution in the amount of $125,000, and sustained an objection to his separate classification of this claim as several only. On January 19, 1996, Wetzler timely filed a Notice of Appeal. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

This appeal arises from a dispute as to whether an equitable subrogation claim brought by appellee Eddie Cantor ("Cantor") against Wetzler and his wife, as guarantors, may reach property held by the Wetzlers as tenants by the entirety. In 1986, the Wetzlers obtained an eleven percent interest in First Stafford Development Corporation ("First Stafford"), a Virginia corporation that was in the business of owning and developing a parcel of real property in Stafford County, Virginia (the "Virginia Property"). First Stafford had several other shareholders, among whom was Cantor, who held the largest percentage interest in the company.

First Stafford eventually sold the Virginia Property to Balbir Brar Associates for $1,650,000. The purchase price was paid partially in cash and partially through Balbir Brar's promissory notes to First Stafford in the aggregate amount of $1,000,000 (collectively, the "Note"). The Note was secured by a purchase money deed of trust on the Virginia Property.

Subsequently, First Stafford borrowed $975,000 from Heritage Federal Savings bank ("Heritage"). This loan was secured by the Note and the deed of trust on the Virginia Property. The proceeds of this loan were distributed to the shareholders of First Stafford. Heritage also obtained the guaran-

tees of the shareholders of First Stafford and of each spouse who was not a shareholder, pursuant to an unconditional written guaranty ("the Guaranty"). The Guaranty provides, in part, as follows:

> THIS UNCONDITIONAL GUARANTY is made this 7th day of May, 1989, by Eddie Cantor and Mary Lee Cantor, husband and wife; Robert Cantor and Selma Cantor, husband and wife; Warren D. Smith, divorced; Earl F. Leitess and Judith Leitess[,] husband and wife; and Robert A. Wetzler and Joyce T. Wetzler, *husband and wife;* ("Guarantors") to HERITAGE SAVINGS BANK, FSB....
>
> The Guarantors, *jointly and severally,* unconditionally guarantee the payment of the Note, whether by acceleration or otherwise, together with all interest due thereon and all other obligations and liabilities, including reasonable attorney's fees, due pursuant to the Note....

(emphasis added).

Eventually, the Resolution Trust Corporation ("RTC") took control of the assets of Heritage, including all of Heritage's rights against the guarantors. When Balbir Brar defaulted on the Note, the RTC sought recovery from the guarantors. In the course of that litigation, Cantor negotiated a settlement with the RTC which required that he pay $500,000 to the RTC in exchange for the RTC's grant of a full release to all guarantors. The settlement agreement was signed by all guarantors.

Cantor next sought contribution from the other guarantors for the RTC payment. Wetzler and his wife refused to contribute, prompting Cantor to bring suit against them in the United States District Court for the Eastern District of Virginia. In that suit, Cantor demanded that each Wetzler separately reimburse him for a *pro rata,* one eighth share of the RTC payment.[1] On August 30, 1994, before the District Court could resolve this dispute, Wetzler and his spouse filed individual bankruptcy petitions. Wet-

---

1. While there were initially nine guarantors, one guarantor, Warren D. Smith, went into bankruptcy before the settlement was reached and thus was unavailable to contribute to the RTC payment.

zler filed this case under Chapter 11, while Ms. Wetzler filed a petition under Chapter 7.

On October 14, 1994, Cantor filed a proof of claim for $154,250 in Wetzler's bankruptcy proceeding. Following a September 12, 1995, hearing, the bankruptcy court issued a Memorandum Opinion and Order in which it allowed Cantor's joint claim against the Wetzlers in the amount of $125,000. The court also sustained Cantor's objection to Wetzler's separate classification of the joint claim.

## I

The standard of appellate review of a bankruptcy court's factual determinations is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure. This Rule provides that the district court shall set aside only findings of fact that are clearly erroneous. *See also Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987). The conclusions of law of the bankruptcy court are reviewed *de novo. See, e.g., In re Bryson Properties, XVIII*, 961 F.2d 496, 499 (4th Cir.), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re Patch*, 24 B.R. 563, 565 (D.Md.1982).

## II

■ "The right of subrogation is an equitable doctrine, designed to perform substantial justice." *Western Cas. and Sur. Co. v. Brooks*, 362 F.2d 486, 490 (4th Cir.1966). This doctrine establishes "the right of 'a surety who pays the debt of another * * * to [assert] all the rights of the person he paid to enforce his right to be reimbursed.'" *Id.* (quoting *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962)).

■ Wetzler's chief contention is that the bankruptcy court erred when it allowed Cantor a joint claim against him and his wife. The parties do not dispute the right of Heritage to seek a joint judgment against the Wetzlers, as the Wetzlers signed the Guaranty as husband and wife and as the Guaranty explicitly provides for "joint and several" liability.

Under the doctrine of equitable subrogation, Cantor, upon settling with the RTC, became subrogated to all the rights the RTC acquired from Heritage. Such subrogation would appear to entitle Cantor to a joint judgment against the Wetzlers. Wetzler maintains, however, that Cantor is limited to several claims against him and his wife under the limitation on recovery provision of *Restatement of Security*, § 141(d) ("section 141(d)"). The Court does not find merit in this argument.

Section 141(d) provides as follows:

Where the duty of the principal to the creditor is fully satisfied, the surety to the extent that he has contributed to this satisfaction is subrogated * * *

(d) to the rights of the creditor against cosureties and to the creditor's interest in security held by them, *but in such case the cosurety's personal liability is limited to the amount which will satisfy his duty to contribute his share of the principal's default.*

(emphasis added). Courts have held that, as between co-guarantors, this provision limits the liability of each co-guarantor to his or her *pro rata* share of the total obligation. *Weitz v. Marram*, 34 Md.App. 115, 121–22, 366 A.2d 86 (1976); *Mansfield v. McReary*, 263 Or. 41, 497 P.2d 654, 656 (1972) (holding that spouses "should not be required to pay a greater proportion ... than the proportion their combined guaranty ... bore to the total of all guaranties"). The purpose of this provision is to foster judicial economy by eliminating the potential for a multiplicity of suits. *Mansfield*, 497 P.2d at 656.

While these cases certainly establish that the Wetzlers should not be liable for more than their joint *pro rata* share as a couple, they do not suggest that the joint liability created by the Wetzlers when they guaranteed the contract as "husband and wife" must be converted to several liability by Cantor's settlement of the RTC's claim. Thus, in finding joint liability, the bankruptcy court did not, as Wetzler suggests, disregard "well-settled" principles of equitable subrogation.

■ Indeed, equitable subrogation compels the "ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." *Liberty Mutual Ins. Co. v.*

*Borsari Tank Corp.,* 248 F.2d 277, 289 (2d Cir.1957) (quoting *Pittsburgh–Westmoreland Coal Co. v. Kerr,* 220 N.Y. 137, 115 N.E. 465, 467 (1917)). In the present case, equitable principles support a finding of joint liability. A finding of several liability could be interpreted as preventing Cantor from reaching property held by the Wetzlers as tenants by the entireties. This result would be inequitable because the entireties property was certainly within the grasp of the RTC, Cantor's predecessor. A finding of several liability would also frustrate the plain language of the Guaranty and would fail to put Cantor into the shoes of the RTC, as required by the doctrine of equitable subrogation. Further, a finding of several liability would constitute an unjustifiable windfall for Wetzler, who had already improved his position substantially by Cantor's settlement of the RTC's claims, because it eliminated Wetzler's liability for the entire obligation.

In addition, under the facts of this case, section 141(d) does not weigh in favor of several liability among the Wetzlers. Cantor will likely satisfy his claim from property held by the Wetzlers as tenants by the entirety. Thus, a determination that the Wetzlers are jointly liable would not lead to a multiplicity of suits, and consequently does not implicate the judicial economy concerns of section 141(d). Accordingly, the Court agrees with the bankruptcy court that section 141(d) does not prevent Cantor from pursuing a joint claim against the Wetzlers.

### III

Wetzler next maintains that the Court committed reversible error by failing to decide certain issues raised by him in the pleadings; namely, (1) that Cantor's recovery is barred by the doctrine of unclean hands; (2) that Cantor cannot satisfy the doctrine of subrogation as adopted by the Bankruptcy Code in 11 U.S.C. § 509(a) because he received consideration for his payment to the RTC; and (3) that Cantor's claim for subrogation is unenforceable because, in refusing to make a loan to First Stafford without the personal guaranty of Ms. Wetzler, Heritage violated the Equal Credit Opportunity Act.

The Court will address these allegations in turn.

### A

A fundamental element of the clean hands doctrine in Maryland "is that the alleged misconduct must be connected with the transaction upon which the claimant seeks relief." *Adams v. Manown,* 328 Md. 463, 475, 615 A.2d 611 (1992). This is so because the doctrine " 'has nothing to do with disapproval of the character or past behavior of the applicant but only with the effect of his present application.' " *Id.* (quoting *Niner v. Hanson,* 217 Md. 298, 309, 142 A.2d 798 (1958)). Wetzler's unclean hands defense is predicated entirely on his assertion that Cantor "engaged in self-dealing with First Stafford" in 1986. This allegation is in no way connected to the present claim for contribution which arises out of the 1994 settlement between the co-guarantors and the RTC. Thus, even if this self dealing allegation were true, Wetzler's unclean hands defense would fail. Additionally, the bankruptcy court was not remiss in not allowing discovery as to other possible incidents of self-dealing by Cantor, as Wetzler presented no evidence of any such incident.

### B

The requirements of 11 U.S.C. § 509 are irrelevant to a case based on equitable subrogation. "Equitable subrogation is a creation of equity, not statute and should not be confused with the subrogation rights specifically set forth in section 509." *In re Spirtos,* 103 B.R. 240, 245 (Bankr.C.D.Cal. 1989). Because equitable subrogation and statutory subrogation are distinct remedies, Wetzler cannot defeat Cantor's claim for equitable subrogation through an allegation that Cantor failed to meet the consideration element of statutory subrogation.

### C

Wetzler next maintains that Heritage violated the Equal Credit Opportunity Act ("ECOA") by requiring Ms. Wetzler to sign the Guaranty. The ECOA provides in pertinent part that "[i]t shall be unlawful for any creditor to discriminate against any ap-

plicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status." 15 U.S.C. § 1691(a)(1). The state of Virginia has an identical provision. *See Va.Code Ann.* § 59.1–21.21:1(a)(1) (Repl.Vol. 1992). Pursuant to the ECOA, 15 U.S.C. § 1691b(a), the Federal Reserve Board has promulgated Regulation B, which provides:

[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. § 202.7(d)(1) (1992). This defense relies principally on *Eure v. Jefferson Nat'l Bank,* 248 Va. 245, 448 S.E.2d 417 (1994), a case in which the Virginia Supreme Court held that the ECOA could be used to avoid a wife's liability on a guaranty that she had been required to sign solely because of her status as wife of a credit applicant. *Id.,* 448 S.E.2d at 421.

Cantor maintains that Wetzler's ECOA defense is meritless. Specifically, Cantor asserts (1) that the defense is barred by the statute of limitations; (2) that the ECOA cannot be asserted as an affirmative defense; (3) that Wetzler has failed to exhaust any remedy he may have against the RTC; and (4) that any ECOA defense Wetzler has must fail here because it is against Heritage, a party that was released by Wetzler in the settlement agreement.

The Court holds that Cantor's fourth objection disposes of Wetzler's ECOA defense. Wetzler concedes that any defense he has under the ECOA is against Heritage, and that such a defense can be asserted against Cantor only because he is a successor to Heritage. Paragraph 3 of the Settlement Agreement provides, in pertinent part, as follows:

*Release of RTC in RTC Suit* Upon the execution of this Agreement ..., R–Wetzler and J–Wetzler ... do hereby, jointly and severally, release, acquit and forever discharge Heritage Savings Bank, F.S.B., Heritage Federal, [and] the RTC, ... as well as the respective heirs, personal representatives, successors and assigns of any

and all of them (collectively, the "Released RTC Plaintiff Parties") from any and all claims, ... *defenses* ... and liabilities of any kind or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or in equity, ... which the RTC Defendants ever had, now have or might hereafter have against the Released RTC Plaintiff Parties, ... which relates to, in whole or in part, directly or indirectly: (a) the RTC Suit or (b) any other obligation relating to the RTC Suit....

(emphasis added). This provision establishes that Wetzler forfeited his right to assert an ECOA defense against Heritage. Accordingly, Wetzler's ECOA defense must also fail as to Cantor. In light of this finding, the Court need not reach Cantor's remaining objections to Wetzler's ECOA defense.

## IV

▮▮▮ For the reasons set forth above, the Court finds that the Wetzlers are jointly liable to Cantor. Property held by a husband and wife as tenants by the entireties is not exempt from the claims of a joint creditor. *Sumy v. Schlossberg,* 777 F.2d 921, 927 (4th Cir.1985); *State v. Friedman,* 283 Md. 701, 706, 393 A.2d 1356 (1978) (finding that "a judgment obtained against both husband and wife arising out of a joint obligation may be satisfied by execution upon property held by the entireties"). Consequently, Cantor may reach the Wetzlers' entireties property.

▮▮▮ In any event, even assuming *arguendo* that Cantor's claims against the Wetzlers were several only, the Court would nevertheless find that Cantor can reach the Wetzlers' entireties property to satisfy his several claims. Section 141(d) impacts only the form of the judgment. It does not necessarily preclude a cosurety with a several claim from reaching any and all property subject to the original claim in satisfaction of the several claim. When the Wetzlers executed the Guaranty, they certainly understood that Heritage could reach their entireties property. Thus, under the circumstances of this case, it would be inequitable and unjust to deny this same prerogative to Cantor, who is

subrogated to all the rights the RTC acquired from Heritage.

 Wetzler asks the Court to limit his contribution to eleven percent of the total settlement amount, as this represents his percentage share of the benefit he received from the venture. However, this Court agrees with the bankruptcy court's statement that *"pro rata* distribution is determined by the number of guarantors, not by the interest of each guarantor," *In re Wetzler,* 192 B.R. 109, 118 (Bankr.D.Md.1996), particularly in light of the fact that this method of calculating loss is used by the courts in both Virginia and Maryland, the only two states whose laws could possibly control this action. *See Houston v. Bain,* 170 Va. 378, 196 S.E. 657, 662 (1938); *Lyon v. Campbell,* 324 Md. 178, 182–84, 596 A.2d 1012 (1991). The cases cited by Wetzler on this issue are from Texas and California and thus do not persuade the Court to abandon established precedent from Virginia and Maryland.

Wetzler further submits that this Court should allow him to classify Cantor's claim separately because he has a reasonable basis for doing so. This argument has at its core the contention that the Wetzlers are not jointly liable to Cantor, a contention that has been rejected by the Court. Thus, this separate classification claim is meritless.

 Finally, at the hearing held on May 31, 1996, counsel for Wetzler expressed concern that a finding of joint liability would enable Cantor to satisfy his entire claim from Wetzler's separate property. This issue seems to be entirely theoretical. Cantor instituted this litigation with the hope of reaching the Wetzlers' entireties property, and the Court has nothing before it to suggest that he would seek to satisfy any part of his claim, let alone his entire claim, from Wetzler's separate property. As a matter of theory, however, the Court agrees that the *pro rata* requirement that has been read into section 141(d) prevents Cantor from recovering more than $62,500 from Wetzler's separate property.

**V**

For all of the foregoing reasons, the Court will affirm the order of the bankruptcy court that allowed a joint claim against the Wetzlers for contribution in the amount of $125,000, and sustained an objection to Wetzler's separate classification of this claim as several only. A formal order will be entered in conformity with this Opinion.