## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Roper Brothers Lumber Co., Inc.

v.

Westover Homes, Inc., et al.

February 13, 1998

Case No. CL95-346

BY JUDGE WILLIAM H. LEDBETTER, JR.

The dispositive issue in this case is whether Patricia Skinner, guarantor with her husband on a credit application for her husband's construction company, is absolved of liability on the ground that her signature was required solely because of her status as spouse of the co-guarantor in violation of the Equal Credit Opportunity Act.

### Facts

In 1988, Kenneth L. Skinner and his wife, Patricia Skinner, moved to the Fredericksburg area so that Mr. Skinner could start his own residential construction business. Previously, he had worked for construction companies in northern Virginia. He created Westover Homes, Inc., a Virginia stock corporation.

Pertinent to this case, Westover began construction of a residential dwelling after receiving a construction loan from Dominion Bank. Mr. Skinner inquired of J. W. Masters, a local division of Roper Brothers Lumber Co., Inc., about furnishing building supplies for the project. On April 12, 1989, a representative of J. W. Masters came to the job site, conferred with Mr. Skinner, and gave him a credit application and guarantee agree-

ment. According to Mr. Skinner, he filled it out, signed it, and handed it back to the representative who then told him, "we need your wife's signature," or something to that effect. Mr. Skinner retrieved the application, took it to his wife for her signature, and returned it to the representative.

The application was referred to Judy Wallace, the credit manager. She conducted a credit investigation, approved the credit application, and opened an account for Westover on June 19, 1989.

Thereafter, J. W. Masters provided building supplies to Westover, on credit, for the home it was building. Westover became delinquent in its payments, which eventually led to this action for recovery of the amount due. Roper Brothers sued Westover, Mr. and Mrs. Skinner, and another guarantor.[1]

Westover suffered a judgment by default on September 5, 1995. The case went to trial on Roper Brothers' claim against the Skinners on January 25, 1998. After considering the evidence and arguments of counsel, the court awarded Roper Brothers judgment against Mr. Skinner on his guaranty in the amount sued for and took under advisement Mrs. Skinner's plea that recovery against her was barred because Roper Brothers had violated the Equal Credit Opportunity Act (ECOA) by requiring her signature on the credit application and guarantee agreement.

### Applicable Law

In pertinent part, the ECOA makes it unlawful for any creditor to discriminate against an applicant with respect to any aspect of a credit transaction on the basis of marital status. 15 U.S.C. § 1691(a)(1).

As authorized by the legislation, the Federal Reserve Board has promulgated regulations to carry out the purposes of the Act. One such regulation provides that a creditor shall not require the signature of an applicant's spouse, other than a joint application, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. 12 C.F.R. § 202.7(d).

The Act provides relief to aggrieved persons by way of compensatory and punitive damages. 15 U.S.C. § 1619(e)(b). Furthermore, the spouse of an applicant for credit may escape liability for the debt if the spouse was required to sign the credit instrument in violation of the Act. See *Eure v.*

---

[1] Roper Brothers' claim against the other guarantor has been severed, by agreement of the parties, and is scheduled for trial by jury at a later date.

*Jefferson National Bank*, 248 Va. 245 (1994). However, it is generally held that the burden is on the spouse asserting a defense under the ECOA to prove that the applicant was otherwise creditworthy. See *Ramsdell v. Bowles*, 64 F.3d 5 (1st Cir. 1995).

## Decision

Few of the facts in this case are disputed. The documents associated with the credit transaction were admitted as evidence without objection. Mr. Skinner's version of how he and his wife signed the application and returned it to the representative was not contradicted. Ms. Wallace's detailed explanation of her credit investigation was unchallenged.

Simply, Roper Brothers argues that Mrs. Skinner failed to carry her burden of proving that Westover and/or Mr. Skinner were independently creditworthy and that there was no violation of the ECOA because Roper Brothers extended credit only after checking the applicant's credit and fulfilling its ECOA obligations.

Just as simply, Mrs. Skinner contends that her signature was required before a determination of the applicant's creditworthiness was made, so that Roper Brothers' evidence about a credit investigation is nothing more than "after the fact justifications" in an attempt to evade the consequences of an ECOA violation. Further, Mrs. Skinner asserts that the evidence shows that Westover and Mr. Skinner were independently creditworthy.

Taking Mrs. Skinner's second argument first, the court is of the opinion that Mrs. Skinner has failed to carry her burden to establish the independent creditworthiness of either her husband's corporation or her husband.

Clearly, no reasonable supplier in the perilous construction industry would extend credit amounting to tens of thousands of dollars to a newly-formed close corporation with no track record, no significant credit history, and few, if any, assets. Such was the case with Westover.

Mrs. Skinner points to the undisputed testimony of Mr. Skinner that Westover had $30,000.00 in the bank, a lot, and a construction loan on the subject property at the time the credit application was signed. Ms. Wallace's testimony that these factors were wholly inadequate is plausible. Cash on hand is not a "hard asset" upon which to extend significant long-term credit. Obviously, cash in the bank one day can be gone the next, depending on the current and recurring debt obligations, none of which was offered in evidence. A lot with a partially-built house on it has some value but is not the sort of asset to which a reasonably prudent creditor would

look for security. A construction loan may provide cash flow, depending upon the progress of the work, but by its very nature, a loan is a liability, not an asset.

As for Mr. Skinner's independent creditworthiness, the evidence shows that his sole source of income was his construction company. He owned no appreciable assets.

The ECOA does not require creditors to have "a clear, established written standard of creditworthiness in existence," as Mrs. Skinner suggests. Ms. Wallace, an experienced credit officer who has evaluated and acted upon hundreds of credit applications in her eleven-year tenure with Roper Brothers, explained the policies and procedures under which Roper Brothers considered all applications for credit. Because of the infinite number of variables, it is reasonable that a building supply company may not have a formal, written standard by which it judges builders' applications for credit. The credit standards and qualifications in place at Roper Brothers in the spring of 1989, as explained by Ms. Wallace, were fair and reasonable and met the requirements of the ECOA and the regulations thereunder.

In sum, the court holds that Mrs. Skinner has failed to establish the creditworthiness of Westover and Mr. Skinner. In fact, even if the burden-of-proof issue were ignored, the court nevertheless would be of the opinion that the evidence shows that neither Westover nor Mr. Skinner, or both of them together, were independently creditworthy for extension of a large line of credit in the construction industry in the spring of 1989.

Nevertheless, as noted above, Mrs. Skinner argues that Roper Brothers did not know any of this on April 12, 1989, when it required Mrs. Skinner's signature on the application, and it cannot now offer these "after the fact justifications."

The court is of the opinion that these findings of Westover's and Mr. Skinner's lack of creditworthiness are not "after the fact justifications." These matters were determined within the weeks between receipt of the credit application on April 12, 1989, and the extension of credit on June 19, 1989. It is noteworthy that Roper Brothers did not extend credit to or open an account for Westover until it had completed a rather extensive credit investigation. Only when the investigation was completed, credit was approved, and an account for Westover opened on June 19, 1989, did the guarantee become operative or of any consequence. By that time, these facts were known to Roper Brothers, and the decision was properly made to extend credit to Westover only if payment was guaranteed by others,

including Mrs. Skinner who had a separate source of income and who had similarly guaranteed a construction loan for the project.

Any other conclusion would put form over substance and would elevate mechanical application of isolated provisions of the Act (and the regulations) over a reasonable interpretation and application based ..pon consideration of the purpose for which the ECOA was enacted.

### Conclusion

The court is of the opinion that Roper Brothers did not violate the ECOA. Accordingly, Mrs. Skinner's plea in bar will be overruled and judgment will be awarded Roper Brothers against Mrs. Skinner, jointly and severally with Mr. Skinner and Westover, for the amount sued for in the motion for judgment.