John Q. HAMMONS and Juanita
Hammons, Respondents,

v.

Theodore J. EHNEY, Jr., Defendant,

and

Carolyn Ehney, Appellant.

No. 78504.

Supreme Court of Missouri,
En Banc.

June 25, 1996.

Stephen G. Mirakian, Kansas City, for appellant.

Douglas L. Carter, Kansas City, for respondents.

PRICE, Judge.

Mrs. Carolyn Ehney appeals a judgment for equitable contribution against her. We hold that (1) a claim for contribution by a codebtor may be tried in equity over the defendant's objection, (2) a litigant does not have a right to findings of fact and conclusions of law in a court-tried case, unless clearly and unequivocally requested, (3) there was sufficient evidence for the trial court to have found the guaranty was relied on and supported by sufficient consideration, (4) any claim Mrs. Ehney might have against Metro North State Bank based on the Equal Credit Opportunity Act is not attributable to the Hammonses and does not void her guaranty or negate her liability for equitable contribution, and (5) a guarantor is liable for only a pro rata proportion of the common debt. We affirm the trial court's judgment as modified in Section VI.

I.

Ted Ehney, Jr., a real estate developer, was loaned 2 million dollars by Metro North State Bank ("Bank") in exchange for a promissory note. The unsecured loan was to be used to cover expenses for one of Mr. Ehney's real estate developments, Executive Hills North, Inc., but Mr. Ehney was the principal on the note.

Mr. Ehney did not pay the note when it came due, but instead negotiated another unsecured loan for 5 million dollars to retire the debt and pay additional expenses. As a condition for the loan, Carolyn Ehney, Mr. Ehney's wife, signed a guaranty making her jointly and severally liable for the full amount. Mrs. Ehney was a businesswoman in her own right and personally owned several businesses. John Hammons, real estate developer, and his wife, Juanita Hammons, also signed guaranties. Mr. Ehney secured the Hammonses' guaranties by offering a second deed of trust in real estate and stock ownership. One of the expenses paid for by the loan was a $125,000 debt to Executive Hills Designs, an interior decorating company owned by Mrs. Ehney.

Once again Mr. Ehney was unable to pay the note when it came due, and the bank notified the Hammonses of the default. The Hammonses paid the bank $5,487,134.94 to satisfy the debt. They brought an action against Mr. Ehney for reimbursement and fraudulent representations and prevailed on a motion for summary judgment in the amount $7,390,645.48. They also sought equitable contribution from Mrs. Ehney for her pro rata share of the payment and, in the alternative, payment on her guaranty as assignees of the note from the Bank. Before trial, the Hammonses voluntarily dismissed their claim as assignees, leaving only their equitable claim for contribution. Mrs. Ehney requested a jury trial. The trial court refused, finding (1) contribution is "a purely equitable claim" and (2) the guaranty Mrs. Ehney signed contains a jury trial waiver. The court rendered judgment against Mrs. Ehney for $2,463,548.47.

## II. Right to a Jury Trial for Contribution Claim

### A.

■ Mrs. Ehney claims that the trial court erred in hearing this case in equity without a jury. She argues that contribution is a legal claim for a money judgment as to which she has a constitutional right to a jury trial. A careful analysis of the development of the

law on this issue indicates that Mrs. Ehney is incorrect.

■ Normally when distinguishing between legal and equitable actions one looks to the remedy requested. A money judgment is a legal remedy whereas some other type of court order is equitable. This distinction is not always controlling. 47 Am. Jur.2d *Jury* § 34 (1995). This Court has recognized that courts sitting in equity may grant money judgments. *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 325 (Mo.banc 1979); *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422 (Mo.banc 1978). We must look to the essential nature of the action, not merely the remedy sought, to determine if contribution is equitable or legal. 47 Am. Jur.2d *Jury* § 34 (1995).

■ Contribution between co-debtors originated as an equitable action in Missouri. "The doctrine of contribution is not founded on contract, but is based on the principle that equality of burden as to a common right is equity, and that wherever there is a common right the burden is also common." *Missouri District Telegraph Co. v. Southwestern Bell Telephone Co.*, 338 Mo. 692, 93 S.W.2d 19, 23 (1935). "The doctrine of contribution finds its basis in general principles of equity and of natural justice rather than contract." *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224, 226 (Mo.App. 1970). The ultimate money judgment is awarded only after the court has determined that it is equitable to share the burden of the debt when no actual contract existed between the co-debtors.

Missouri courts have also developed a legal claim for contribution between co-obligors. *Dysart v. Crow*, 170 Mo. 275, 70 S.W. 689, 690 (1902); *Jeffries v. Ferguson*, 87 Mo. 244, 245 (Mo.1885); *Van Petten v. Richardson*, 68 Mo. 379, 380 (Mo.1878); *Hoerrman v. Latham*, 71 S.W.2d 70, 72 (Mo.App.1934); *Hanna v. Hyatt*, 67 Mo.App. 308, 313 (1896); *Wilkerson v. Sampson*, 56 Mo.App. 276, 280 (1893). This "new" action has arisen both in common law under the theory of implied contract and by the creation of a statutory right to contribution.[1] *Dysart*, 70 S.W. at

---

1. Statutory contribution between co-obligors still exists. Parties having joint and several liability

690 (statute); *Van Petten*, 68 Mo. at 380 (implied contract).

 Generally, equity will not intercede if there is an adequate remedy at law. *Harris v. State Bank and Trust Co. of Wellston*, 484 S.W.2d 177, 179 (Mo.1972); *Umphres v. J.R. Mayer Enterprises, Inc.*, 889 S.W.2d 86, 90 (Mo.App.1994). An exception to this theory, however, exists for claims which originated in equity prior to the recognition of a legal claim. For such claims concurrent jurisdiction in both equity and law exists. As explained in 1 *Pomeroy's Equity Jurisprudence* § 182 (1941):

> Whenever equity originally acquired jurisdiction over any particular subject-matter, right, or interest, because the law either did not recognize the existence of the right or interest, or could not furnish an adequate remedy for its protection, and the scope of the common law has since become enlarged, so that it now not only admits the particular primary right or interest to be legal, but also furnishes a legal remedy by its actions, *which may even be adequate* under ordinary circumstances, still the equitable jurisdiction is not in general thereby destroyed or lessened, although it is made to be concurrent, and although the special reasons for its continued exercise— namely, the inadequacy of the legal remedy—may no longer exist.

This exception has been recognized generally. "The cases over which the courts have concurrent authority are exceptions to the rule which precludes the equity court from hearing a cause where the law affords a remedy." 27 Am.Jur.2d *Equity* § 88 (1966). It has also been recognized in Missouri. "[W]hen concurrent jurisdiction exists, i.e. law and equity, equitable principles can be invoked despite the existence of an adequate remedy at law." *Estate of Cantonia v. Sindel*, 684 S.W.2d 592, 595 (Mo.App.1985).

 Thus, the subsequent creation of a legal claim for contribution in Missouri by common law and statute did not extinguish the equitable action, but simply created concurrent jurisdiction in both law and equity

for contribution claims. 18 Am.Jur.2d *Contribution* § 84 (1985); 72 C.J.S. *Principal and Surety* § 280 (1987). Missouri courts, as well as others, have recognized that contribution between co-debtors may be brought as either an equitable or a legal action. *Dysart*, 70 S.W. at 690; *Hoerrman*, 71 S.W.2d at 72; *Michigan Millers Mutual Ins. Co. v. United States Fidelity and Guaranty Corp.*, 306 Pa.Super. 88, 452 A.2d 16, 18 (1982); *Cooper v. Greenberg*, 191 Va. 495, 61 S.E.2d 875, 878 (1950). Contribution may still be brought in equity. *Tindall v. Holder*, 892 S.W.2d 314, 324 (Mo.App.1994); *Automobile Club Inter–Insurance Exchange v. Farmers Ins. Co., Inc.*, 646 S.W.2d 838, 840 (Mo.App.1982) ("Contribution is an equitable duty rather than contractual and is enforceable where one party is required to pay more than his share of common liability ..."); *Citizens State Bank v. Bossard*, 733 P.2d 1296, 1298 (Mont.1987).

For the proposition that contribution is now solely a legal claim, Mrs. Ehney relies on *Equity Mut. Ins. Co. v. Kroger Grocery & Baking Co.*, 238 Mo.App. 4, 175 S.W.2d 153, 158 (1943), which states that "[i]n modern jurisprudence contribution is a law action." However, the sole case on which *Equity Mutual* relies does not state that contribution is exclusively a law action. *Missouri District*, 93 S.W.2d at 22. In fact, that case implies that an action in contribution, particularly one not based on statute, could be brought in law or equity. *Id.* To the extent that *Equity Mutual* implies an action for contribution may only be brought in law, it should not be followed.

 It should also be noted that *Equity Mutual* and *Missouri District* were personal injury tort cases. *Equity Mutual*, 175 S.W.2d at 154–55; *Missouri District*, 93 S.W.2d at 21. Historically, Missouri enforced contribution between co-debtors, but not between joint tort-feasors, assuming that by relieving a person committing a tortious act from full responsibility courts would encourage these acts. *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 469, 473 (Mo.banc 1978); 18

on an instrument are now entitled to contribution under § 400.3–116, RSMo 1994. Co-sure-

ties may seek contribution under § 433.110, RSMo 1994.

Am.Jur.2d *Contribution* § 40 (1985). The right to contribution among joint tort-feasors was created by statute. *Whitehead & Kales,* 566 S.W.2d at 473; *§ 537.060, RSMo 1994.* At the time *Equity Mutual* and *Missouri District* were decided, joint tort-feasors only had a legal, statutory remedy and equitable contribution did not exist outside the scope of the statute.[2] *State ex rel. McClure v. Dinwiddie,* 213 S.W.2d 127, 131 (Mo.banc 1948), *overruled by Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo.banc 1978); *State ex rel. McCubbin v. McMillian,* 349 S.W.2d 453, 458 (Mo.App. 1961). Although contribution among joint tort-feasors is based upon the same basic concern for fairness as supports equitable claims among co-debtors, it was a right created and considered to be "grounded in law." *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764, 767 (Mo.banc 1984) (questioning applicability of laches).

■ On the other hand, contribution between joint debtors originated in equity. Any subsequent legal remedy created by statute or devised by courts under the legal theory of an implied contract is additional to the original equitable remedy and does not preclude it. In *Comstock v. Keating,* 115 Mo.App. 372, 91 S.W. 416 (1905), a co-suretor argued that the right to contribution was purely statutory and therefore no equitable action existed. The court disagreed, stating "If the right of contribution existed solely by virtue of statutory provisions, the position of the appellants would be better. But it is a right which courts of equity originally enforced...." *Id.* 91 S.W. at 418. In short, the statement in *Equity Mutual* simply does not apply to claims between co-guarantors

where concurrent equitable jurisdiction exists.

### B.

■ Mrs. Ehney claims she has a constitutional right to a jury trial.[3] Citizens of Missouri are entitled to a jury trial in all actions to which they would have been entitled to a jury when the Missouri Constitution was adopted. *Mo. Const. art. I, § 22(a); Vannoy v. Swift & Co.,* 356 Mo. 218, 201 S.W.2d 350, 354 (1947); *State ex rel. Tolbert v. Sweeney,* 828 S.W.2d 929, 933 (Mo.App. 1992).

This "cutoff" for the right to a jury trial is based on explicit language in the constitution. "The right of a trial by jury *as heretofore enjoyed* shall remain inviolate ..." *Mo. Const. art. I, § 22(a)* (emphasis added). Particularly, the phrase "as heretofore enjoyed" has been interpreted to mean that the constitution protects the right as it existed when the constitution was adopted and does not provide a jury trial for proceedings subsequently created. *State v. Hadley,* 815 S.W.2d 422, 425 (Mo.banc 1991); *DeMay v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640, 648 (1931); *Sweeney,* 828 S.W.2d at 933; *State ex rel. Missouri Com'n on Human Rights v. Lasky,* 622 S.W.2d 762, 763 (Mo. App.1981). The "heretofore" language was first adopted in the 1875 constitution. *Mo. Const. art. II, § 28 (1875); Gentry, by Gentry v. Douglas,* 744 S.W.2d 788, 789 (Mo.banc 1988). Nevertheless, the court in *Lasky* indicated that the protection only applied to procedures "... in existence prior to the adoption of the 1945 Constitution." *Lasky,* 622 S.W.2d at 763; *see also Sweeney,* 828 S.W.2d

---

2. The holding in *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978), essentially expanded joint tortfeasors' right to contribution beyond the scope of the statute and created a common law right between tortfeasors who were not judgment debtors. *See also State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764, 765 (Mo.banc 1984); *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727, 730–31 (Mo.banc 1982). This Court based its holding on the "principle of fairness imbedded within our law ..." *Whitehead & Kales,* 566 S.W.2d at 474. *Whitehead & Kales* was decided many years after *Equity Mutual* and *Missouri District.*

3. Mrs. Ehney argues that the denial of her request for a jury trial violates the Seventh Amendment of the United States Constitution. The Seventh Amendment has not been extended to the states through the Fourteenth Amendment and is, therefore, inapplicable to state actions. *Irwin v. Globe–Democrat Publishing Co.,* 368 S.W.2d 452, 459 (Mo.1963), *cert. denied* 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147 (1963); *Campbell v. St. Louis Union Trust Co.,* 346 Mo. 200, 139 S.W.2d 935, 939 (1940). Therefore, we only address her arguments based on the Missouri Constitution.

at 933. However, this Court has stated multiple times that the right applied to actions that existed at common law before the adoption of the first constitution, in 1820. *Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 11 (Mo.banc 1992) (*quoting Miller v. Russell,* 593 S.W.2d 598, 605 (Mo.App. 1979)); *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 907 (Mo.banc 1992), *cert. denied,* 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992). As to this issue, the decisions of this Court, not *Lasky* or *Sweeney* control.

There was no absolute right to a jury trial for an equitable claim for contribution between co-debtors before the adoption of our constitution in 1820 or at any time thereafter. Mrs. Ehney had no right pursuant to the Missouri Constitution to a trial by jury for this equitable action.[4]

## III. De Novo Review

■ Mrs. Ehney requests that this Court review the facts as well as the law de novo. She claims she is entitled to such review because she requested findings of fact and conclusions of law from the trial court, but they were not given in accordance with Rule 73.01(a)(3). This rule requires the trial court to make findings of fact and law, if requested. Mrs. Ehney's argument fails for two reasons.

■ First, it is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 868 S.W.2d 118, 119 (Mo.App.1993); *Millard Farms, Inc. v. Sprock,* 829 S.W.2d 1, 4 (Mo.App.1991). Merely submitting proposed findings to aid the court does not trigger the court's duty to make findings of fact and law. *Schnurman v. Western Casualty & Surety Co. of Fort Scott, Kan.,* 352 Mo. 650, 179 S.W.2d 31, 34 (1944); *McBride v. Mercantile–Commerce Bank & Trust Co.,* 330 Mo. 259, 48 S.W.2d 922, 928 (1932); *Tatro v. Grofe,* 514 S.W.2d 652, 653 (Mo.App.1974).

A review of the record reveals that counsel for Mrs. Ehney did not clearly and unequivocally request findings of fact and conclusions of law pursuant to Rule 73.01(a)(3). As to this issue the transcript reads as follows:

MR. MIRAKIAN (Mrs. Ehney's counsel): * * * At this time then, Your Honor, the Defendant Carolyn Ehney would rest her case and we do have a motion for judgment as well as proposed findings of fact and conclusions of law, if I can find them here, I will find it in just a moment, which we will give you for your consideration and before ruling on the case.

THE COURT: Are you, by that statement, saying that you've made a request on findings of fact, conclusions of law, have you made that request?

MR. MIRAKIAN: No sir. What I'm saying is that in the motion for judgment that we will be making, as soon as—we've now rested our case, I am submitting with that proposed findings of fact and conclusions of law and I'm asking that the Court adopt those findings of fact and conclusions of law in entering the judgment for Carolyn Ehney that we are requesting, so I have those proposed findings and conclusions to give to you and also to give to Mr. Carter as well.

THE COURT: Let me just understand from both counsel, does either side believe they've requested the Court to make specific findings of fact, conclusions of law? Mr. Carter?

MR. CARTER: We have not, Your Honor.

THE COURT: Have you?

MR. MIRAKIAN: I misunderstood Your Honor's question. No. I don't believe that up till now we have. We are asking this Court to make findings of fact and conclusions of law and that is why we have prepared them and are submitting them to the Court, which if the Court desires to adopt these or some others, that's fine, but I have these here to hand to the Court now.

THE COURT: I'm welcome to review, you know, anything that you have to give me, Mr. Mirakian. I don't know that the

---

4. Because we hold contribution is an equitable claim that may be tried without a jury, we need not decide whether Mrs. Ehney contractually waived her right to a jury trial.

Court is under any obligation at this time to make specific findings of fact or conclusions of law.

MR. MIRAKIAN: I think that's correct, Your Honor. I'm simply requesting that the Court will rule.

THE COURT: Why don't you give me whatever pleadings you wish and I'll be glad to review them as well.

MR. MIRAKIAN: Yes sir. These were for, if you decide to do it, these are to aid you in doing that, and if you decide not to do it, that's—

THE COURT: I understand.

MR. MIRAKIAN: —*you have the discretion to do what you choose.* (emphasis added)

\* \* \* \* \* \*

Counsel for Mrs. Ehney first acknowledged that he had not requested findings of fact or conclusions of law. He then told the court that he was submitting proposed findings to the court for it to adopt. Next, he indicated he was only requesting the court to rule on the case. The court asked clarifying questions a number of times, and it is obvious that at the end of the discussion the court believed findings had not been requested under the rule. Finally counsel for Mrs. Ehney told the court "you have the discretion to do what you choose". On the state of the record, we cannot convict the trial court of error for failing to make findings of fact and conclusions of law. If a party intends to rely upon the provisions of Rule 73.01(a)(3), the request must be clear and unequivocal, not self-contradictory.

 Second, even if Mrs. Ehney's counsel had properly requested findings from the trial court, she would not be entitled to de novo review. Ordinarily if the trial court fails to comply with a request, the case is remanded for production of findings. Only if there is enough evidence on the record to support the trial court's decision may an appellate court *affirm* without remand. This is based upon the idea that the complaining party has failed to show prejudice. *Lattier v. Lattier,* 857 S.W.2d 548, 549 (Mo.App. 1993); *Jo B. Gardner Inc. v. Beanland,* 611 S.W.2d 317, 321–322 (Mo.App.1980). An ap-

pellate court may not *reverse* a decision below upon its own determination of facts. In *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), this Court found the use of the term "de novo" is "no longer appropriate in appellate review of cases under Rule 73.01."

## IV. Consideration

 Mrs. Ehney claims that her guaranty is unenforceable because the Bank did not rely on it when approving Mr. Ehney's loan and, therefore, it lacks consideration. A creditor may not enforce a guaranty unless it relied on it when deciding to extend credit. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo.banc 1993) (*citing Linwood State Bank v. Lientz,* 413 S.W.2d 248, 256 (Mo.1967)). Mrs. Ehney argues that if the guaranty could not be enforced against her by the Bank, the Hammonses cannot collect contribution from her. In order to collect for contribution, "[t]he parties must be under a common burden, obligation or liability." *Commercial Union Ins.,* 457 S.W.2d at 227. They must be "equally liable for the same debt." 38 C.J.S. *Guaranty* § 115 (1943); see also *Automobile Club Inter–Insurance Exchange,* 646 S.W.2d at 840; *Equity Mutual,* 175 S.W.2d at 158.

 The guaranty in question, however, states that it was executed "[f]or the purpose of inducing METRO NORTH STATE BANK of Kansas City, Missouri ... to lend money" to Mr. Ehney and that Mrs. Ehney guarantees "the prompt and full payment to Bank when due of all the indebtedness". A recitation of the consideration on which an agreement is based is prima facie evidence that sufficient consideration existed. *Earl v. St. Louis University,* 875 S.W.2d 234, 237 (Mo.App.1994). Furthermore, all written promises to pay another a specific sum of money, signed by the promisor, import a consideration. *Gibson v. Harl,* 857 S.W.2d 260, 267 (Mo.App.1993); *Gover v. Empire Bank,* 574 S.W.2d 464, 468 (Mo.App.1978); *§ 431.020, RSMo 1994.* Under both theories, a presumption is created that consideration exists, which must be overcome by evidence to the contrary. *Gibson,* 857 S.W.2d at 267–

68; *Earl*, 875 S.W.2d at 237; *MFA Inc. v. Dettler*, 817 S.W.2d 658, 666 (Mo.App.1991).

■ Mrs. Ehney claims the Bank could not have relied on the guaranty because she did not sign it contemporaneously with the extension of credit to Mr. Ehney. At trial she produced evidence that she was in Florida at the time the loan was given. Although the guaranty is undated and we do not know when it was received by the bank, bank records verify that the guaranty was present in the Bank's file as of August 22, 1989, four days after the loan.

■ Even assuming that the guaranty was not received until four days after the loan was made, Mrs. Ehney does not prevail. Missouri courts enforce guaranties executed after a loan is made, as long as it is part of the underlying loan transaction. *Henty Constr. Co. v. Hall*, 783 S.W.2d 412, 419 (Mo.App.1989) (three to five days); *Coleman v. Villa Capri Restaurant*, 712 S.W.2d 65, 66 (Mo.App.1986) (thirteen days); *Centennial State Bank v. S.E.K. Constr. Co., Inc.*, 518 S.W.2d 143, 150 (Mo.App.1974) (ten days). The bank requested Mrs. Ehney's guaranty before the loan was extended. The "Loan Presentation/Information Sheet", used by the loan committee when making its decisions, lists Mrs. Ehney as a guarantor of the loan. There is substantial evidence to support the finding that the guaranty was part of the underlying loan transaction. and, therefore, enforceable.

■ Mrs. Ehney further argues that Bank "minutes", an internal memo to the loan committee, demonstrate that the committee only relied on Mr. Hammons' guaranty when deciding whether to issue the loan because it only lists Mr. Hammons as a guarantor. She points out that the Bank asked Mr. Ehney and Mr. and Mrs. Hammons for financial information prior to extending the loan but did not request a financial summary from her. Mrs. Ehney does not cite, nor are we aware of, any Missouri case law that mandates a bank require a financial statement from a guarantor as condition precedent to reliance. As stated previously, her guaranty was requested by the bank, and the loan committee was aware that

it would be provided when granting the loan. The guaranty states that it was given to induce the Bank to extend credit to Mr. Ehney. The guaranty was executed no later than four days after the loan. Because there is evidence to support the inference that the loan committee relied on her guaranty when issuing the loan, we uphold the trial court's judgment. *Murphy*, 536 S.W.2d at 32.

## V. Equal Credit Opportunity Act

■ Under the Equal Credit Opportunity Act ("ECOA"), *15 U.S.C. § 1691–1691f (1994)*, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status...." *15 U.S.C. § 1691(a)(1) (1994)*. Federal regulations further provide that a creditor cannot require the signature of an applicant's spouse on any credit instrument "if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested," *12 C.F.R. § 202.7(d)(1) (1996)*, and that if additional guarantors are required the applicant's spouse may serve as a guarantor but cannot be required to do so in the place of an acceptable substitute. *12 C.F.R. § 202.7(d)(5) (1996)*.

Mrs. Ehney claims that the Bank violated the ECOA by requiring her to guaranty her husband's debt. She maintains that he was individually creditworthy and, alternatively, that her guaranty was not needed in light of the guaranty submitted by the Hammonses. She seeks to overturn the judgment against her by arguing 1) that the alleged ECOA violation could be asserted directly against the Hammonses as a defense and 2) that the ECOA violation voided her guaranty to the bank, thereby extinguishing the common liability that is the bases of the Hammonses' claim for equitable contribution. We do not find that any alleged violation of the ECOA relieves Mrs. Ehney of her obligation to the Hammonses.

The ECOA sets forth a specific remedy for violation of the act, a federal civil action against the creditor for damages, punitive damages not to exceed $10,000, and attorney fees. *15 U.S.C. § 1691e(a),(b),(d) (1994)*. A two year statute of limitations exists regard-

ing such actions. *15 U.S.C. § 1691e(f) (1994).*

The ECOA also provides that a court of competent jurisdiction may issue "equitable and declaratory relief as necessary" to enforce the requirements of the act. *15 U.S.C. § 1691e(c) (1994).* Many cases have utilized this provision as authority for allowing a debtor to assert violations of the ECOA as a counterclaim for recoupment or as an affirmative defense to collection actions, even after the running of the two year statute of limitations. *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 32 (3rd Cir.1995); *Sony Electronics, Inc. v. S.G. Putnam,* 906 F.Supp. 228, 229 (D.N.J.1995); *F.D.I.C. v. Medmark,* 897 F.Supp. 511, 514 (D.Kan.1995); *Resolution Trust Corp. v. Schonacher,* 844 F.Supp. 689, 696 (D.Kan. 1994); *Integra Bank/Pittsburgh v. Freeman,* 839 F.Supp. 326, 330 (E.D.Pa.1993); *Riggs Nat. Bank of Washington, D.C. v. Linch,* 829 F.Supp. 163, 169 (E.D.Va.1993), *aff'd* 36 F.3d 370 (4th Cir.1994); *CMF Virginia Land, L.P. v. Brinson,* 806 F.Supp. 90, 93 (E.D.Va. 1992); *Eure v. Jefferson Nat. Bank,* 248 Va. 245, 448 S.E.2d 417, 421 (1994); *Marine American State Bank of Bloomington, Ill. v. Lincoln,* 433 N.W.2d 709, 712 (Iowa 1988).

All of these cases, however, dealt with claims made against the actual lenders or those standing in the lenders' shoes.[5] Neither party has cited, nor have we found, any case upholding a claim or a defense against an innocent co-guarantor concerning allegedly wrongful acts of the lender. Section 1691 limits the remedies provided thereunder to "creditors." "Creditors" are defined at 12 C.F.R. § 202.2(*l*) (1996) as follows:

*Creditor* means a person who, in the ordinary course of business, regularly participates in the decision of whether or not to extend credit. The term includes a creditor's assignee, transferee, or subrogee who so participates.... A person is not a creditor regarding any violation of the act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or

practice that constituted the violation before becoming involved in the credit transaction....

Although Mrs. Ehney presented evidence that Mr. Hammons held an ownership interest and might be a director in another financial institution in Ohio, and that Mrs. Hammons was once a director of a bank in Springfield, she did not show that either Mr. or Mrs. Hammons regularly participated in any decisions to extend credit, or that they were ordinarily in the business of extending credit at any time relevant to this suit. As such the Hammonses are not "creditors" within the meaning of the act and any claims for recoupment or other defenses cannot be asserted directly against them by Mrs. Ehney. Little purpose could exist for penalizing innocent co-guarantors who had no control over the actions of the Bank.

■ Even *if* the Bank violated the ECOA, Mrs. Ehney cannot use this provision to void the guaranty or to extinguish her liability for equitable contribution. The vast majority of cases considering relief available for violation of the ECOA have held that there is no authority in the statutory language for the proposition that a violation of the ECOA renders an instrument void. *F.D.I.C. v. 32 Edwardsville, Inc.,* 873 F.Supp. 1474, 1480 (D.Kan.1995); *Resolution Trust Corp.,* 844 F.Supp. at 696; *Riggs,* 829 F.Supp. at 169; *CMF Virginia Land,* 806 F.Supp. at 95; *Diamond v. Union Bank & Trust of Bartlesville,* 776 F.Supp. 542, 544 (N.D.Okl.1991); *United States v. Joseph Hirsch Sportswear Co., Inc.,* 1989 WL 20604 (E.D.N.Y.1989), *aff'd without op.,* 923 F.2d 842 (2nd Cir.1990). *But see Medmark,* 897 F.Supp. at 514; *Integra,* 839 F.Supp. at 329; *Eure,* 448 S.E.2d at 420.

The reasoning of these cases is that where such drastic relief is not expressly stated in the statute, it will not be implied. We agree. While Mrs. Ehney might have pursued legal and equitable remedies against the Bank pursuant to the ECOA, her guaranty was not rendered void. Accordingly she was under a

---

**5.** Although Mr. Hammons was an assignee of the note, this action concerns only his claim as a co-

guarantor.

common obligation with the Hammonses that would support an equitable claim for contribution.

## VI.

 The trial court entered judgment against Mrs. Ehney for one-third of the entire amount of the judgment entered against Mr. Ehney, $7,390,645.48. However, the Hammonses sued Mr. Ehney for common law fraud as well as for reimbursement of the principal debt. The damages assessed against him included the damages under the fraud claim.

"When two or more persons have bound themselves as coguarantors, each of them, as between themselves, is required to bear a ratable proportion of the amount for which they are liable under the contract of guaranty." 38 Am.Jur.2d *Guaranty* § 128 (1968); *see also* 18 C.J.S. *Contribution* § 8(b) (1990). Mrs. Ehney is not liable for fraud damages under the guaranty, but only for charges attributable to the 5 million dollar note. Mr. Ehney's liability for common law fraud was not the common debt of his co-guarantors, and fraud damages cannot be considered in apportioning Mrs. Ehney's contribution obligation. The record reflects that the Hammonses satisfied the common debt to the bank by payment of $5,487,134.94. Mrs. Ehney's pro rata share of this debt was $1,829,044.98. Pursuant to Rule 84.14 we modify and affirm the judgment of the trial court accordingly.

All concur.