

# Missouri Court of Appeals

## Southern District

### Division Two

JOYCE CAMP McDERMOT, personally, and as beneficiary and successor trustee under the Barbara J. Hilderbrand Revocable Trust Agreement dated January 11, 2005, as Amended and Restated,

      Plaintiff-Appellant,

v.

DAVID DONER and STEPHANIE DONER, et al.,

      Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD36775

Filed: October 14, 2021

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable James Ronald Carrier, Special Judge

**<u>AFFIRMED</u>**

This declaratory judgment action was filed after plaintiff Joyce Camp McDermot (McDermot) was replaced as successor trustee and beneficiary of the Barbara J. Hilderbrand Revocable Trust dated January 11, 2005 (Trust) in a separate guardian/conservatorship action (hereinafter referred to as Conservatorship).[1] After the death of Barbara Hilderbrand (Hilderbrand), McDermot filed the underlying eight-count petition. In her second amended

---

[1] McDermot, as plaintiff below, filed "personally, and as beneficiary and successor trustee" under the Trust. We refer to her in all alleged capacities as McDermot.

petition, she named the following persons and entities as defendants: David Doner (David) and his wife, Stephanie Doner (Stephanie), personally and as trustees of the DSD Trust; Susan Baddley (Susan) and her husband, Robert Baddley, personally and as trustees of the Baddley Family Trust; Nancy Morrill (Nancy) and her husband, Greg Morrill, personally and as trustees of the Gregory and Nancy Morrill Trust; Rebecca Baddley; and the American Humane Association. Hereinafter, we refer to all these persons and entities collectively as Defendants. David, Susan and Nancy were Hilderbrand's nephew and nieces, respectively.[2] Following a bench trial, the court made the following decisions relevant to this appeal: (1) on Counts 1-3, the court declined to grant declaratory relief to McDermot because it would not terminate the uncertainty or controversy giving rise to this proceeding; and (2) on Counts 4-7, the court found in favor of the Defendants named in those counts.

On appeal, McDermot presents seven points. In Points 1-3, 5 and 6, McDermot contends the trial court erred by refusing to enter a declaratory judgment voiding or changing certain rulings made by the judge in the Conservatorship, and by other trial courts in related cases. Point 4 contends the trial court erred by failing to make specific findings. Point 7 contends the trial court erred by refusing to quiet title to Hilderbrand's residence in favor of McDermot. Finding no merit in any of these points, we affirm.

**Factual and Procedural Background**

"We view the evidence in the light most favorable to the trial court's judgment, disregarding any contrary evidence and inferences." ***Estate of Lindner***, 621 S.W.3d 567,

---

[2] Because several Defendants share the same last name, some family members are referred to by their first names for purposes of clarity. No familiarity or disrespect is intended. The American Humane Association was named as a Defendant, but that organization did not appear or participate in the proceedings below or on appeal. Rebecca Baddley was also named as a Defendant in Count 8, but that claim was dismissed with prejudice prior to trial.

570 n.1 (Mo. App. 2021); *see Miller v. Culton*, 617 S.W.3d 879, 880 (Mo. App. 2021). The trial court is free to believe some, all, or none of the evidence, and we defer to the trial court on matters of credibility. *Miller*, 617 S.W.3d at 880; *In re Marriage of Morgan*, 624 S.W.3d 407, 411 (Mo. App. 2021). In accordance with these principles, the following evidence was adduced at trial.

McDermot was a former neighbor and caretaker of Hilderbrand. In April 2011, Hilderbrand executed a durable power of attorney (DPOA) appointing McDermot as her attorney in fact, should Hilderbrand be deemed incompetent to manage her finances. McDermot then opened a new joint account at Ozark Mountain Bank in the names of "Hilderbrand or [McDermot.]" McDermot put her name on this account so McDermot "could write checks after [Hilderbrand] got sick." A May 2012 bank statement for this joint account showed balances of $123,509 in checking and $140,006 in certificates of deposit (CDs).

In June 2012, Hilderbrand executed a sixth amendment to the Trust, appointing McDermot as the successor trustee upon Hilderbrand's death, resignation or incompetency. The amendment also designated McDermot as the sole beneficiary, awarding her 100% of the Trust proceeds.[3]

On July 17, 2012, McDermot was interviewed by Janelle Turney (Turney), an investigator with the Missouri Department of Health and Senior Services. McDermot said that she and Hilderbrand decided that, in exchange for McDermot's care, Hilderbrand would

---

[3]  Hilderbrand created her revocable Trust in January 2005 with no mention of McDermot. In 2006, Hilderbrand began executing a series of amendments, at first adding a specific bequest of her home and contents to McDermot and McDermot's former husband, Warren Camp. Later, that devise and bequest were changed to name the couple as sole beneficiaries. By the sixth amendment, however, Warren Camp's name was removed entirely, and McDermot was named sole beneficiary and successor trustee.

pay McDermot "a small $300 mth sum and when she passes she will get the house and 2 $25,000 CD's." McDermot later told Turney that, shortly after Turney last visited, a doctor "signed to activate the DPOA for [McDermot.]"

In July 2012, David received a call from McDermot's former husband, Warren Camp. Camp warned David that Hilderbrand might be in danger. David became concerned that Hilderband was being left alone without food, water or proper care. He first called Hilderbrand, but no one answered the phone. David then called his two sisters, Susan and Nancy. On September 17, 2012, David made a hotline report to senior investigators.

On September 19, 2012, Kaye Schneider (Schneider), a social worker with Taney County Senior Services, responded to the hotline report. Schneider went to Hilderbrand's home. McDermot answered the door, but she would not allow Schneider to enter the home. When McDermot was told that law enforcement would be called, she allowed Schneider into the house and reluctantly permitted Schneider to visit with Hilderbrand alone. Hilderbrand said that she did not know her family was trying to reach her and would welcome calls or visits. According to Hilderbrand, McDermot told her that: (1) Hilderbrand's family members had not tried to get in touch with her and they did not care about her; and (2) McDermot "is the only one who cares about her." When Hilderbrand was asked to sign a HIPPA form, she declined at first. She said that she would have to ask McDermot if it "was alright for her to sign" and that she "does not want to make [McDermot] mad if she signs the form." As Schneider was leaving, McDermot said she was acting as "Hilderbrand's power of attorney" and had a copy of the document giving her that authority. McDermot refused, however, to provide that document to Schneider.

On September 21, 2012, Susan and Stephanie attempted to visit Hilderbrand on her birthday. McDermot would not let them enter the house. According to Stephanie,

4

McDermot said, "[i]f your Aunt Bobbie hears you, she's going – she has a phone in her hand and she's going to call the police and have you arrested." Susan and Stephanie then went to the living room windows, where they saw Hilderbrand in her hospital bed. They waved and blew kisses to Hilderband, who waved and "feebly" blew kisses back.

Nancy also attempted to visit Hilderbrand. Unable to reach Hilderbrand by phone, Nancy called McDermot and left a message saying she was coming to visit Hilderbrand on her birthday. In response, McDermot sent Nancy a text stating that the police would be called if she came to visit. Nancy did travel to Missouri as planned, but she did not go to visit Hilderbrand.

On September 27, 2012, David filed a petition for appointment of a guardian and conservator for Hilderbrand. At a hearing held October 4, 2012, the probate court appointed Taney County Public Administrator Carol Davis (Davis) as Hilderbrand's "guardian and conservator on an emergency basis." The docket entry read: "Order hand delivered to Ms. Davis to take action immediately."

On October 5, 2012, Davis went to Hilderbrand's home with a police officer. The door was locked and there was no response to her knock. Davis walked around the home and saw through a window Hilderbrand lying in a bed. A note on the door stated that Hilderbrand did not want visitors. McDermot arrived and, after speaking with the officer, allowed Davis and the officer to enter the house. McDermot told Davis that Hilderbrand only had a week to live. Hilderbrand was "totally unresponsive" and had been alone in the home. Later, Hilderbrand told Davis that Hilderbrand knew "she was taking morphine, and didn't want to take it unless she had to."

On November 7, 2012, Davis was appointed full guardian and conservator for Hilderbrand. The inventory filed in the Conservatorship indicated that Hilderbrand had

5

assets totaling $890,547. The September 2012 Ozark Mountain Bank statement showed checks signed by McDermot, payable to cash, totaling $700. The statement showed balances in the joint account of $129,321 in checking and $250,007 in CDs.

On November 27, 2012, a motion was filed for appointment of a successor trustee. Notice of a hearing on the matter, set for December 12, 2012, was sent to McDermot. Following the hearing, Davis was appointed successor trustee for the Trust, replacing McDermot as successor trustee. The order appointing successor trustee stated that, because of Hilderbrand's incapacity to serve as trustee and "conflicts" under the Trust, "there is a need for someone neutral to be appointed[.]"

After Davis took over as Hilderbrand's guardian, Hilderbrand lived for over a year. Davis arranged for Hilderbrand's home care 24 hours per day, so she was never alone again. Davis also made sure family members were able to visit. Hilderbrand was able to get out of bed into a wheelchair, then to use a walker, and later to walk on her own. No longer bedridden, Hilderbrand was very active during the last year of her life. She went with her family to see a show and out to eat. She also went for rides in a caretaker's convertible. Photos were admitted in evidence, depicting Hilderbrand both when she was first discovered unresponsive in her home, and a year later, smiling and eating cake on her birthday. Social worker Schneider, who had responded to the hotline call, noted during a later visit that Hilderbrand, while under Davis' care, "was happy[,] clean and alert." Hilderbrand told Schneider that she "was afraid of [McDermot], that she did not want [McDermot] back into her home[.]"[4]

---

[4] Because of Hilderbrand's excellent progress under Davis' care, the full guardianship and conservatorship lasted about three and a half months. In late February 2013, the probate judge sustained Davis' motion to reduce the guardianship from full to a "Limited Guardianship for medical purposes and a full Conservatorship to protect her financial affairs and protect her from being unduly influenced by others.

In January 2013, Davis filed a motion for authority to amend the Trust. With respect to the Trust beneficiaries, Davis had been told by Hilderbrand that "she wanted everything put back the way it was with her family as beneficiaries." Davis' motion asserted that, after reviewing the various amendments to the Trust, she believed Hilderbrand "was the victim of undue influence in making such amendments to her Trust." The motion sought to revoke all restatements and amendments to the Trust, including the sixth amendment naming McDermot as sole beneficiary.[5] The motion to amend the Trust went on to name four family members as Trust beneficiaries to share equally: David, Nancy, Susan, and their mother, Patricia Doner, who was Hilderbrand's sister. A hearing was set for February 13, 2013. On the day of the hearing, McDermot's counsel entered his appearance on McDermot's behalf and filed two motions. These motions were: (1) a motion to intervene "as a necessary and indispensable party"; and (2) a motion "to strike [Davis'] motion for authority to amend" the Trust, and to reset the hearing. The hearing was held as scheduled, and the court granted Davis the authority to amend the Trust. On March 20, 2013, McDermot's motion to intervene in the Conservatorship was granted.

Hilderbrand died in November 2013. The annual settlement was filed on December 3, 2013, and an order approving it was entered the next day. On December 13, 2013, a suggestion of Hilderbrand's death was filed.

An amended 2013 annual settlement was filed on March 7, 2014. After paying expenses, the previous balance of $890,547 was reduced to $773,466. On March 13, 2014, Davis filed a motion to terminate the Conservatorship due to Hilderbrand's death. Davis

---

[5] The sixth amendment also provided that, in the event McDermot would predecease Hilderbrand, the Trust proceeds would be distributed to the American Humane Society. The previous five amendments also named the American Humane Society, but provided only that it would receive a specific bequest of $2,000.

also filed a final settlement. In the final settlement, the $773,466 balance was distributed as required under the Trust, leaving a "$0.00" balance remaining.

On March 20, 2014, McDermot filed a Rule 74.06(b) motion to set aside the court's prior orders. On April 1, 2014, an order was entered terminating the Conservatorship and noting that there were no Conservatorship assets left to distribute. On May 14, 2014, the court denied all pending motions, including the Rule 74.06(b) motion. McDermot did not file an appeal in the Conservatorship proceeding.

In June 2016, McDermot filed the underlying eight-count petition against the family beneficiaries. Insofar as relevant here, seven counts, as alleged in the second amended petition, asked the trial court to rule as follows:

Count 1 asked the trial court to declare that McDermot has the right to collaterally attack actions by the probate judge in the Conservatorship action.

Count 2 sought a declaration that McDermot is the successor trustee of the Trust.

Count 3 sought a declaration that McDermot remains the sole beneficiary of the Trust, and that, should McDermot predecease Hilderbrand, the American Humane Society would become the sole beneficiary.

Count 4 asked the court to impose a constructive trust on monies distributed from the Trust.

Count 5 sought to quiet title to Hilderbrand's residence distributed from the Trust, implicating other proceedings involving the same real property.

Count 6 prayed for an order of restitution for unjust enrichment.

Count 7 was a statutory claim for breach of trust.[6]

A three-day bench trial was held in June 2019. The trial court took judicial notice of the Conservatorship and five other cases, several of which were pending at the time of

---

[6] In response, Defendants filed an answer and affirmative defenses of unclean hands, collateral estoppel and laches.

trial. These other cases included: (1) Hilderbrand's estate opened after her death; (2) the estate of Hilderbrand's sister, Patricia Doner; (3) a disciplinary proceeding before the Supreme Court of Missouri involving the probate judge in the Conservatorship; (4) a dissolution action involving McDermot captioned Joyce E. Camp v. Warren R. Camp; and (5) a case filed in federal district court between McDermot and Taney County. In addition, the trial court later noted that a sixth case, "[p]ending at the time of the filing of the Notice of Lis Pendens," existed in Barry County involving McDermot and the family beneficiaries of the Trust.

In the second amended judgment in this case, the trial court refused to rule on the "appropriateness of the actions taken" in three of the cases listed above. The court explained:

> The Court makes no conclusions of law as to the appropriateness of the actions taken to date [in the Conservatorship, Hilderbrand's estate, and Patricia Doner's estate] as the Court did not hear the entirety of the evidence presented in hearings in those cases, and further makes no findings as to whether [McDermot was] entitled to seek relief and/or appeal in those cases.

As noted above, the court declined to grant declaratory relief on Counts 1-3 and found in favor of the relevant Defendants on Counts 4-7. This appeal followed. Additional facts will be included below as we discuss McDermot's seven points on appeal.

**Discussion and Decision**

*Points 1-3, 5 and 6*

Points 1-3, 5 and 6 challenge the trial court's refusal to grant declaratory relief. The Declaratory Judgment Act vests trial courts with the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." ***Schaefer v.***

9

***Koster***, 342 S.W.3d 299, 300 (Mo. banc 2011) (citation omitted); *see* § 527.010.[7]  A party seeking declaratory relief must demonstrate, *inter alia*, that there is no adequate remedy at law.  ***Payne v. Cunningham***, 549 S.W.3d 43, 48 (Mo. App. 2018); ***Snelling v. Kenny***, 491 S.W.3d 606, 615 (Mo. App. 2016); ***Hickerson v. Missouri Bd. of Prob. and Parole***, 475 S.W.3d 204, 207 (Mo. App. 2015).  Another reason a trial court can decline to grant declaratory relief is that the "judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."  § 527.060; Rule 87.07.

"In determining whether or not a declaratory judgment should be entertained, the trial court is afforded considerable discretion."  ***Barron v. Shelter Mut. Ins. Co.***, 220 S.W.3d 746, 747 (Mo. banc 2007).  We review a trial court's refusal to grant declaratory relief for an abuse of discretion.  *See* ***Int'l Minerals & Chem. Corp. v. Avon Products, Inc.***, 817 S.W.2d 903, 908 (Mo. banc 1991) (the discretion in determining whether to enter a declaratory judgment belongs to the trial court, which will only be reversed for an abuse of discretion); ***Altmann v. Altmann***, 978 S.W.2d 356, 360 (Mo. App. 1998) (trial court's decision to deny declaratory relief reviewed for abuse of discretion).[8]

McDermot contends the trial court erred by refusing to grant declaratory relief because she "was not a party to the [Conservatorship] when [the probate judge] made those docket entries and orders" appointing Davis as successor trustee and amending the Trust to name family beneficiaries.  McDermot claims she was entitled to a declaration that:

---

[7] All statutory references are to RSMo (2000).  All rule references are to Missouri Court Rules (2019).

[8] McDermot contends our standard of review is governed by Rule 84.13(d) and ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo banc 1976).  The review of a decision to *grant* declaratory relief is reviewed in that manner.  *See* ***Karney v. Dep't of Labor & Indus. Relations***, 599 S.W.3d 157, 161 (Mo. banc 2020) (review of judgment granting declaratory relief); ***Century Motor Corp. v. FCA US LLC***, 477 S.W.3d 89, 94 (Mo. App. 2015) (same standard of review).

10

she remains the successor trustee and the beneficiary of the Trust (Point 1);

the probate judge's "docket entries and orders [are] void" (Point 2);

she has the right to "collaterally attack" actions taken by the probate judge because his actions violated her constitutional right to due process and the opportunity to be heard (Point 3);

the order purporting to authorize Davis to amend the Trust "had to be void" because the Trust opted out of a provision under the Uniform Trust Code allowing amendment by a conservator (Point 5); and

since the Conservatorship and the estates of Hilderbrand and Patricia Doner were all closed and not still pending by the time the trial court entered its second amended judgment in this case, the court was wrong to conclude that "entry of a declaratory judgment … would not terminate the uncertainty or controversy giving rise to this proceeding" (Point 6).

For reasons that follow, the trial court did not abuse its discretion by declining to grant declaratory judgment.

First, McDermot had an adequate remedy at law. A proceeding to appoint a guardian or conservator for an adult is an adversary probate proceeding pursuant to § 472.140.2 and § 472.141.  As we explained in *Matter of Gurgel*, 543 S.W.3d 135 (Mo. App. 2018):

As relevant in this case, section 475.075.2 requires that the respondent (i.e., the person sought to be protected) and other interested persons be served with notice of hearing.  Section 475.020 generally makes Chapter 472 applicable to guardianships and conservatorships.  And, with exceptions not relevant here, section 472.140.2 defines an "adversary probate proceeding" as "any proceeding brought pursuant to any provision of chapter[ ] ... 475 which requires, as a condition precedent to an entry of an order or judgment on the merits, notice of hearing to persons interested in the proceeding...." In turn, section 472.141.1 makes the rules of civil procedure except for Rule 55 applicable to adversary probate proceedings subject to statutory provisions prescribing practice, procedure or pleading, applicable to the pending proceeding.  The probate court can make all or specific provisions of Rule 55 applicable to a particular adversary probate proceeding by order. Section 472.141.1(2); *see also* 5A Missouri Practice, Probate Law & Practice § 516 (3rd ed. 2017).  There is no indication in the record before us that the probate court ordered all or any specific provision of Rule 55 to apply in this case. As a result, the rules of civil procedure apply in this case except for Rule 55.

*Id.* at 138 n.6. Thus, the rules of civil procedure (except Rule 55) applied to this adversary probate proceeding in the Conservatorship. McDermot was given notice of the hearing on the motion to appoint a successor trustee. McDermot was permitted to intervene as a party in the Conservatorship. Although that occurred after the motion for authority to amend the Trust had been sustained, all rulings made by the trial court were still interlocutory and subject to revision when she intervened. *See* § 472.150; ***Schieber v. Schieber***, 298 S.W.3d 130, 133 (Mo. App. 2009); ***In re Estate of Standley***, 204 S.W.3d 745, 748 (Mo. App. 2006).

McDermot also filed a Rule 74.06(b) motion to set aside the rulings in the Conservatorship. Because this motion was filed before any final judgment was entered, it was an authorized after-trial motion. *See* ***Citimortgage, Inc. v. Waggoner***, 440 S.W.3d 589, 590 (Mo. App. 2014). The Rule 74.06(b) motion was overruled on May 14, 2014. Once that occurred, the April 1st order terminating the Conservatorship became final for purposes of appeal.[9] If McDermot had appealed, she could have obtained appellate review of the prior rulings replacing her as successor trustee and amending the Trust to replace her as a beneficiary. Based on our review of the record, she did not do so. A declaratory judgment action may not be used as a subterfuge for relitigating a question as to which a former judgment is conclusive. ***Pace v. City of St. Joseph***, 458 S.W.3d 870, 874 (Mo. App. 2015); ***Wright v. Bartimus Frickleton Robertson & Gorny PC***, 364 S.W.3d 558, 564-65 (Mo. App. 2011); *see also* ***Smith v. Smith***, 524 S.W.3d 95, 100 (Mo. App. 2017) (assertions that the trial court erroneously applied the law, known by the litigants at the time of direct appeal,

---

[9] *See* § 472.180 (requiring all appeals to be taken within the time prescribed by the rules of civil procedure relating to appeals); Rule 81.04(a) (requiring the notice of appeal to be filed not later than 10 days after the judgment or order appealed from becomes final); Rule 81.05(a)(2) (if a timely, authorized after-trial motion is filed, a judgment becomes final on the earlier of: 90 days from the date the last such motion was filed, or the date when the last such motion is ruled).

12

should be raised therein and not in a declaratory judgment action); ***Hamilton v. State***, 412 S.W.3d 333, 336 (Mo. App. 2013) (generally, validity of a judgment can only be attacked by direct appeal, rather than collateral attack via declaratory judgment action).

Second, the trial court took judicial notice of at least six other cases involving the same issues, several of which were pending at the time of the June 2019 trial. McDermot wanted the trial court in the case at bar to change rulings in these other cases in a way that would be inconsistent with the relief already granted in closed cases, and create conflicts in ongoing cases before other judges. Doing either of these things would greatly increase uncertainty and controversy, rather than eliminating it. *See* § 527.060; Rule 87.07. Therefore, the trial court did not abuse its discretion by denying declaratory relief. Points 1-3, 5 and 6 are denied.

*Point 4*

In Point 4, McDermot contends "the trial court erred by failing to explain the legal basis for its decision and by failing to make findings on the controverted fact issues[.]" Our review is governed by Rule 84.13(d) and ***Murphy v. Carron***, 536 S.W.2d 30 (Mo. banc 1976). We are required to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. ***Murphy***, 536 S.W.2d at 32. The following facts are relevant to this point.

The trial court's pre-trial orders provided that: (1) "if any party intends to request Findings of Fact, Conclusions of Law, and Judgment," the request should be made "no later than May 15, 2019"; and (2) "each party shall file a proposed Findings of Fact, Conclusions of Law, and Judgment no later than June 10, 2019." McDermot filed a "Request for Findings of Fact & Conclusions of Law" stating, in its entirety:

> Plaintiff, by counsel, and pursuant to Rule 73.01, asks that the court make
> findings on material issues of fact and conclusions of law in keeping with

13

the proposed findings of fact and conclusions that will be submitted to the court by plaintiff prior to trial.

On June 10, 2019, both parties submitted their "Proposed Findings of Fact, Conclusions of Law and Judgment[.]" Following trial, McDermot submitted her "1st Revised Proposed Findings of Fact and Conclusions of Law[.]"

Point 4 argues that the court "did not make sufficient findings of fact and conclusions of law" because McDermot timely filed her request for findings and conclusions on May 6, 2019, and her proposed findings and conclusions on June 10, 2019, before trial. According to McDermot, "the court's findings of fact and its explanation of the legal basis for its ruling are so incomplete that they do not comply with Rule 73.01 and impede appellate review." We disagree.

Rule 73.01 provides, in relevant part:

(c) The court shall render the judgment it thinks proper under the law and the evidence.

> If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

> The court may, or *if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party*. Any request for an opinion or findings of fact shall be made on the record *before the introduction of evidence* at trial or at such later time as the court may allow.

> All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

Rule 73.01(c) (emphasis added).

Here, McDermot failed to properly request findings on controverted material fact issues pursuant to Rule 73.01. In ***Hammons v. Ehney***, 924 S.W.2d 843 (Mo. banc 1996),

14

our Supreme Court stated that, in making a request for specific findings, parties must identify the issues they wish the court to decide. *Id*. at 849. The Court explained:

> [I]t is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide. Merely submitting proposed findings to aid the court does not trigger the court's duty to make findings of fact and law.

*Id*. (internal citations omitted). Thus, Rule 73.01(c) requires a party to identify specific controverted material facts for the trial court's findings. *Id*.; *see, e.g.*, *Weiss v. Weiss*, 702 S.W.2d 948 (Mo. App. 1986). In *Weiss*, the western district of this Court noted that "no controverted fact issues were specified in the general request" and that "[f]ailure to do so negated any duty on the part of the trial court to make specific findings of fact." *Id*. at 951. Similarly, in *MFA Oil Co. v. Martin*, 597 S.W.3d 351 (Mo. App. 2020), "a general request for findings of fact and the submission of proposed findings to aid the trial court are insufficient to require the trial court to make specific findings under Rule 73.01(c)." *Id*. at 353 n.1.

McDermot's general request in this case did not identify those specific controverted material fact issues upon which she wanted the trial court to make findings. *See Hammons*, 924 S.W.2d at 849; *see, e.g.*, *Weiss*, 702 S.W.2d at 951. Her proposed findings were insufficient to require the court to make specific findings under Rule 73.01(c). *See MFA Oil Co.*, 597 S.W.3d at 353 n.1. Accordingly, the trial court did not fail to comply with Rule 73.01(c) in making its findings of fact and conclusions of law. Point 4 is denied.

*Point 7*

In Point 7, McDermot contends the trial court "erred by refusing to quiet title" to Hilderbrand's residence in favor of McDermot. The following facts are relevant to this point.

1. In October 2012, McDermot was the successor trustee of the Trust and its sole beneficiary.

2. On December 12, 2012, the trial court in the Conservatorship appointed Davis as successor trustee for the Trust, replacing McDermot.

3. On February 13, 2013, Davis was granted authority to amend the Trust. McDermot was replaced as a beneficiary of the Trust.

4. McDermot filed a motion to strike Davis' authority to amend the Trust.

5. That motion was overruled in February 2013.

6. McDermot was granted leave to intervene as a party in the Conservatorship in March 2013.

7. McDermot also filed a Rule 74.06(b) motion to set aside the probate judge's orders/judgments, including the ones appointing Davis as successor trustee and granting Davis authority to amend the Trust.

8. That motion was overruled in May 2014.

9. McDermot did not file a notice of appeal that would have permitted her to obtain appellate review of those rulings.

10. Davis was acting successor trustee of the Trust when she transferred all the Trust's interest in Hilderbrand's residence to David, Nancy, Susan, and their mother, Patricia Doner.

11. Following Patricia Doner's death in 2016, title to her quarter interest in the residence was placed in Patricia Doner's trust pursuant to Taney County probate court order.

12. In 2017, Nancy, the successor trustee of Patricia Doner's trust, transferred the quarter interest to David, Nancy, and Susan, who are now record owners of the residence.

The trial court denied McDermot's quiet title request because she failed to prove that she had "a claim of title, estate or interest in the real property" at issue.

Our standard of review in a quiet title action is the same as in other court-tried cases. *Sugar Ridge Properties v. Merrell*, 489 S.W.3d 860, 863 (Mo. App. 2016). As noted previously, when reviewing the trial court's judgment, all evidence and inferences are viewed in the light most favorable to the judgment, and all contrary evidence and inferences

16

are disregarded. ***Sugar Ridge Prop.***, 489 S.W.3d at 863-64. Due regard is given to the opportunity of the trial court to have judged the credibility of witnesses, as the trial court is vested with the discretion to believe or disbelieve all, part, or none of any witness' testimony. ***Id***.

A quiet title is a statutory action to determine the respective estates, titles and interests in land of competing claimants in the lawsuit. ***Lester v. Nationstar Mortg., LLC***, 505 S.W.3d 843, 846 (Mo. App. 2016); § 527.150.1. In order for McDermot to obtain quiet title relief, she had to prove that she had better title to the Hilderbrand residence than any of the other parties to this action. *See* ***Long v. Sterling Real Estate Acquisitions, LLC***, 554 S.W.3d 455, 459 (Mo. App. 2018). "Plaintiffs in a quiet title suit must succeed on the strength of their own title and if they fail to prove, prima facie, that they hold record title, their cause must fail." ***McCord v. Gates***, 159 S.W.3d 369, 374 (Mo. App. 2004); *see also* ***Sugar Ridge Prop.***, 489 S.W.3d at 864.

Point 7 challenges the trial court's ruling that McDermot failed to prove that she had a claim of title, estate or interest in the residence. McDermot argues that the trial court's ruling is unsupported by the evidence. That argument lacks merit for two reasons.

First, it was McDermot's burden to prove she had better title to the residence than the other parties. The trial court decided that McDermot did not do so. Because she failed to prove her claim, the judgment in favor of Defendants does not need to be supported by substantial evidence. *See* ***Taylor v. Taylor***, 585 S.W.3d 390, 395 (Mo. App. 2019) (because appellant failed to prove its six claims for quiet title, the judgment against it on those claims needed no evidentiary support); ***Walker v. Walker***, 485 S.W.3d 403, 408-09 (Mo. App. 2016) (respondents in quiet title action were not required to present any evidence that the conveyance through which the appellant claimed title was invalid); ***McCord***, 159 S.W.3d at

17

374 (if a quiet title claimant fails to prove it holds record title, no evidence is necessary to support a judgment for defendant).

Second, McDermot argues that her claim of title to the residence continues to exist, even though she was replaced as successor trustee and beneficiary of the Trust in the Conservatorship action. The premise of her argument is that she was not a party when those actions occurred, so she is not bound by them. That premise is false. She was permitted to intervene as a party in the Conservatorship. At the time she did so, the aforementioned rulings were still interlocutory. The judge in the Conservatorship proceeding denied McDermot's requests that those rulings be changed, and she failed to appeal from the judgment in the Conservatorship. Because McDermot's status as successor trustee and as beneficiary of the Trust was adjudicated against her in the Conservatorship action, those rulings cannot be collaterally attacked in this new proceeding. *See **Atkinson v. Firuccia***, 567 S.W.3d 190, 195 (Mo. App. 2018) (a party cannot collaterally attack the merits of a final judgment entered in a previous proceeding); ***Bugg v. Rutter***, 466 S.W.3d 596, 602 (Mo. App. 2015) (validity of a judgment can generally "only be attacked by direct appeal, not by collateral attack"). Accordingly, Point 7 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J./P.J. – OPINION AUTHOR

DON E. BURREL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR


18